SULLIVAN *v.* EMPLOYMENT SECURITY COMMISSION.

1. Unemployment Compensation — Disqualification — Intoxication.

Employee was not disqualified for unemployment compensation benefits for having left work voluntarily without good cause attributable to his employer after expiration of period of his enforced absence from work by imprisonment for being intoxicated while not at work (CLS 1956, § 421.29).

2. Same—Construction of Statutes—Disqualification.

It is not the proper function of the Supreme Court to amend the employment security act to broaden or extend the disqualifications fixed by plain language by the legislature (PA 1936 [Ex Sess], No 1, as amended).

Carr, Kelly, and Voelker, JJ., dissenting.

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted September 24, 1959. (Docket No. 48, Calendar No. 47,914.) Decided January 4, 1960.

Scott Sullivan presented his claim for unemployment compensation benefits when his employment was terminated by Ceco Steel Products Corporation. Claim denied by Michigan Employment Security Commission and its Appeal Board, which determina-

References for Points in Headnotes

48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds §§ 35, 38.

tion was upheld on certiorari to circuit court. Plaintiff appeals. Reversed.

*Roman V. Ceglowski,* for plaintiff.

KAVANAGH, J. Claimant was employed by defendant Ceco Steel Products Corporation as a laborer from August 2, 1950, to August 9, 1957. Monday, August 12th, was his next work day. On this day he advised the employer that he had some personal business "downtown" and that he was taking 1/2 day off to take care of this business. While "downtown" he met some friends and began to drink, eventually becoming intoxicated, was arrested and was sent to the Detroit house of correction for a 30-day period. He was released on Saturday, September 7th, from this sentence. On Thursday, August 15th, the employer received a telephone call from claimant's wife stating that the claimant was arrested for drunkenness and was incarcerated in the Detroit house of correction. On the following Friday claimant's wife picked up his check. She continued to call the employer 1 or 2 times each week thereafter while the claimant was in jail.

Claimant applied to his employer for a resumption of work either on Tuesday, September 10th, as alleged by the claimant, or on Thursday, September 12th, as testified to by the employer's witness. He was not reinstated. He had been removed from the payroll as a "voluntary quit" as of August 15, 1957.

On September 16, 1957, claimant filed a claim for unemployment benefits and the claim was denied. It was alleged he was disqualified under the provisions of the Michigan employment security act*, section 29, subd (1) (a) (1) (CLS 1956, § 421.29 [Stat Ann 1957 Cum Supp § 17.531]), because his separa-

---

* CL 1948 and CLS 1956, § 421.1 *et seq.* (Stat Ann 1950 Rev and Stat Ann 1957 Cum Supp § 17.501 *et seq.*).

tion was considered voluntary and in no way attributable to his employer. It was conceded that the employer received notice from the wife of the claimant on the fourth day of his absence from work, which is within the terms of the contract between the company and the union that in order not to be considered as a "voluntary quit" an employee is to give notice within 4 days.

A request for redetermination was filed by claimant, and prior determination affirmed by the commission on November 12, 1957. The referee who heard the case on November 25, 1957, affirmed the redetermination issued by the commission. The decision of the referee was affirmed by the appeal board on February 18, 1958. The decision of the appeal board was in turn affirmed by the late Joseph A. Moynihan, judge of the Wayne county circuit court, from which decision claimant appeals.

Section 29 of the Michigan employment security act (CLS 1956, § 421.29 [Stat Ann 1957 Cum Supp § 17.531]) provides, in part, as follows:

"(1) An individual shall be disqualified for benefits:

"(a) For the duration of his unemployment in all cases where the individual has: (1) Left his work voluntarily without good cause attributable to the employer or employing unit, or (2) has been discharged for misconduct connected with his work or for intoxication while at work."

The sole question before this Court is: May an employee who is discharged by his employer because of his forced absence from work, occasioned by his incarceration for being drunk, properly be disqualified for benefits under section 29, subd (1) (a) (1) of the employment security act on the theory that he left his work voluntarily without good cause attributable to his employer?

A similar question was before this Court in the case of *Thomas* v. *Employment Security Commission,* 356 Mich 665. The majority opinion in that case, written by Chief Justice DETHMERS, controls the fact situation presented to us here. No service would be rendered the bench and bar in restating the legal reasoning and the citation of authorities referred to in the *Thomas* opinion. It should be sufficient to quote a part of the last paragraph, which reads as follows (p 670):

"There appears to have been nothing voluntary about this so far as claimant was concerned. On the contrary, at that juncture he was present at a place where he did not wish to be, jail, and, perforce, absent from the place where he did wish to be, his place of work."

Section 29 of the act is the disqualification section. Under subsection (1) (a) (2) thereof it specifically mentions discharge for misconduct connected with work or for intoxication while at work.

The legislature did not make provision for disqualification under the facts in this case. It is not the proper function of this Court to amend the statute to broaden or extend the disqualifications fixed by plain language by the legislature. Whether such a disqualification ought to be inserted in the act is an argument that should be presented to the legislature and not to this Court.

The order affirming the determination of the appeal board by the circuit judge is hereby reversed. Judgment may be entered in accordance with this opinion. Costs in favor of appellant.

DETHMERS, C. J., and SMITH, BLACK, and EDWARDS, JJ., concurred with KAVANAGH, J.

CARR, J. (*dissenting*). The question at issue in this case is whether the plaintiff is entitled to unem-

ployment compensation under the provisions of the
Michigan statute.* The employment security com-
mission denied benefits. The referee before whom
proofs were taken affirmed such action, and the em-
ployment security appeal board upheld the factual
findings and legal conclusions of the referee. On
appeal to the circuit court of Wayne county judg-
ment was entered in accordance with the action of
the appeal board.

The facts and legal questions at issue appear in
the following excerpt from the opinion of the referee.

"Claimant was hired as a warehouse laborer by
the Ceco Steel Products Corporation on August 2,
1950. He continued in this employment through
August 9, 1957. Monday, August 12th, was his next
work day. Work was available for the claimant.
However, the claimant was absent on that day and
in the next succeeding days. On Thursday, August
15th, the employer received a telephone advice from
claimant's wife stating that the claimant was ar-
rested for drunkenness and was incarcerated in the
Detroit house of correction. Claimant's wife con-
tinued to call the employer 1 or 2 times in each week
thereafter while the claimant was in jail.

"Claimant was found guilty of the charge of drun-
kenness and was sent to the Detroit house of correc-
tion for a 30-day period. However, he was given
off 3 days for good behavior and was released on
Saturday, September 7, 1957. Claimant applied to
the employer for a resumption of work either on
Tuesday, September 10th, as alleged by the claim-
ant, or on Thursday, September 12th, as testified to
by the employer's witness. He was not reinstated.
He had been removed from the payroll as a volun-
tary quit as of August 15, 1957, because of said
absence.

---

* PA 1936 (Ex Sess), No 1, as amended (CL 1948 and CLS 1956,
§ 421.1 *et seq.* [Stat Ann 1950 Rev and Stat Ann 1957 Cum Supp,
§ 17.501 *et seq.*]).

"Claimant admitted that he had been arrested on Monday, August 12th, for being in a drunken stupor and had been confined at the Detroit house of correction through September 7, 1957. Claimant stated that he reported for a reinstatement on the job on Tuesday, September 10th, and was informed that he had been laid off. He has not been reinstated in said employment since.

### "Findings, Reasons and Conclusions

"The question in this case deals with claimant's separation from work. The issue involves the terms of section 29 (1) (a) of the act. It is therein provided that an individual shall be disqualified for benefits for the duration of his unemployment (1) if he leaves his work voluntarily without good cause attributable to the employer, or (2) if he is discharged for misconduct connected with his work.

"A separation from work because of incarceration is generally held to constitute a voluntary leaving of the work, on the theory that the commission of the offense which leads to an arrest and a conviction, and an incarceration, was the voluntary act of the individual. Hence, the termination of the employment is the result of a voluntary act of the worker.

"In the instant case, the claimant voluntarily imbibed excessively in alcoholic spirits and was convicted of drunkenness, as a misdemeanor, a public offense. He was absent from work because of incarceration resulting from such conviction. On the basis of this record, the redetermination as issued by the commission must be sustained."

In view of the situation presented on this record, is plaintiff entitled to receive benefits from the unemployment reserves established under the statute? In determining the matter it is significant that the legislature in the declaration of policy, set forth in section 2 of the act, expressly declared that such reserves should be used "for the benefit of persons

unemployed through no fault of their own." In a comparatively recent decision the Pennsylvania court in *Ault Unemployment Compensation Case,* 188 Pa Super 260 (146 A2d 729), commented with reference to the nature and purpose of the unemployment reserve fund, saying in part (pp 263, 264):

"Every covered employee in this Commonwealth has an interest in the unemployment compensation fund, which is to protect him in case of unemployment through no fault of his own. The unemployment compensation authorities have a duty to every covered employed person to protect the fund against claims of those not entitled to payment out of it. They, likewise, have a duty to every unemployed person covered by the law to see that such person receives from the fund that to which he is entitled.

"An unemployment case is not a law suit between the employer and the employee, although it has sometimes mistakenly been considered as such. An unemployment compensation case is a claim by the unemployed person against the unemployment compensation fund.

"It is the duty of the referee and the board to determine *all* the facts—those which favor the claimant, and those which would protect the fund from any improper or illegal payment to the claimant. *Gagliardi Unemployment Compensation Case* (1958) 186 Pa Super 142 (141 A2d 410)."

We are confronted here with a situation in which an employee voluntarily became intoxicated, was arrested, convicted, and sentenced to 30 days in the Detroit house of correction. He was thus removed from his employment as the result of voluntary conduct on his part. Under such circumstances it cannot be said that he became unemployed through no fault of his own. Quite naturally the employer, learning what had occurred, discharged him. That plaintiff's absence from his work interfered, at least

to some extent, with the employer's business is a matter of inference. It was misconduct of an employee affecting his work, at least to some extent, and bearing on his right to unemployment benefits, a problem discussed in *Ault Unemployment Compensation Case, supra,* and also in *Shanor Unemployment Compensation Case,* 188 Pa Super 301 (146 A2d 336). That an employer is entitled to discharge an employee indulging in conduct of such nature is not open to question.

It is provided in section 29, subd (1) (a) of the Michigan statute (CLS 1956, § 421.29 [Stat Ann 1957 Cum Supp § 17.531]) that an employee is disqualified for benefits:

"(a) For the duration of his unemployment in all cases where the individual has: (1) Left his work voluntarily without good cause attributable to the employer or employing unit, or (2) has been discharged for misconduct connected with his work or for intoxication while at work."

In the case at bar plaintiff was properly discharged as a result of his voluntary action which rendered it impossible for him to continue with his employment during the period of his incarceration. As noted, his employer was justified in discharging him. What plaintiff did amounted to his leaving his employment voluntarily and without fault on the part of his employer. To some extent at least it constituted a detriment to the employer's business. Under the circumstances plaintiff is not entitled to benefits from the reserve fund created to help those who are unemployed through no fault of their own.

The general policy and purpose of the Michigan statute, and authorities from other States, were discussed and cited in the minority opinion in *Thomas v. Employment Security Commission,* 356 Mich 665, 670. It is unnecessary to repeat what was there said.

In the present proceeding the employment security commission, the referee, the appeal board, and the circuit judge reviewing the matter on certiorari correctly determined the question involved. Under the law and the facts disclosed by the proofs, plaintiff is not entitled to benefits from the unemployment reserve fund.

The judgment of the circuit court should be affirmed.

KELLY and VOELKER, JJ., concurred with CARR, J.