LUCAS v MICHIGAN EMPLOYMENT SECURITY COMMISSION

Docket No. 70309. Submitted November 15, 1983, at Detroit.—Decided February 8, 1984. Leave to appeal applied for.

Gregory R. Lucas was employed by Massey-Ferguson from 1974 through August 1, 1980. He worked on the "cab line" from 1978 until he was temporarily laid off on May 5, 1980. When he returned to work on June 23, 1980, he was assigned to the "B-line". He worked on the B-line for two weeks, then took a medical leave of absence from July 7, 1980, to August 15, 1980. The entire plant shut down on August 1, 1980, and Lucas was laid off again. The workers on the cab line who were laid off on or about August 1, 1980, were certified as eligible for Trade Readjustment Allowance (TRA) benefits by the Department of Labor. The workers on the B-line, including Lucas, were denied eligibility for TRA benefits. Lucas appealed to the Michigan Employment Security Commission. The MESC Board of Review found that Lucas was ineligible for TRA benefits since at the time he was last laid off he was employed on the B-line and not the cab line. Lucas appealed that decision to the Wayne Circuit Court, which found that the MESC Board of Review had correctly interpreted the Trade Act of 1974 in holding Lucas ineligible for TRA benefits, Patrick J. Duggan, J. Lucas appeals, claiming the MESC erroneously interpreted the TRA eligibility requirements. *Held:*

1. Because Lucas was not separated from adversely affected employment, in this case the cab line, on or after the impact date, August 1, 1980, he does not qualify for TRA benefits.

2. The MESC incorrectly interpreted a provision of the Trade Act of 1974 to require the separation of an employee directly from adversely affected employment, and the trial court incorrectly upheld the MESC's decision based upon that interpretation. The provisions do require, however, that in order to qualify for TRA benefits the claimant's separation from adversely affected employment, whether direct or indirect, must

REFERENCES FOR POINTS IN HEADNOTES

[1] 76 Am Jur 2d, Unemployment Compensation §§ 93, 94.
[2] 76 Am Jur 2d, Unemployment Compensation § 90.5.
[3] 5 Am Jur 2d, Appeal and Error § 785.

be on or after the impact date specified by the Department of Labor's certification for adjustment assistance. Such was not the case here. Where a trial court achieves the right result but assigns the wrong reason therefor, the Court of Appeals will not disturb the result on appeal.

Affirmed.

1. UNEMPLOYMENT COMPENSATION — APPEAL — SCOPE OF REVIEW.

A decision by the Michigan Employment Security Commission may be reversed only where it is contrary to law or is not supported by competent, material, and substantial evidence on the whole record (MCL 421.38[1]; MSA 17.540[1]).

2. UNEMPLOYMENT COMPENSATION — TRADE READJUSTMENT ALLOWANCE — ADVERSELY AFFECTED EMPLOYMENT — IMPACT DATE.

The Trade Readjustment Act of 1974 does not require that a claimant be separated directly from adversely affected employment to be eligible for TRA benefits, but it does require that the claimant's separation from adversely affected employment, whether direct or indirect, must be on or after the impact date specified by the Department of Labor's certification for adjustment assistance (19 USC 2291; 29 CFR 91.3[a], subds [3], [4], [20], 91.7).

3. APPEAL — RIGHT RESULT.

A result reached by a trial court will not be disturbed by the Court of Appeals on appeal where the trial court achieved the right result but assigned the wrong reason therefor.

*Foster, Meadows & Ballard, P.C.* (by *Joseph C. Bird*), for appellant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *David A. Voges,* Assistant Attorney General, for appellee.

Before: WAHLS, P.J., and D. E. HOLBROOK, JR., and R. E. ROBINSON,* JJ.

PER CURIAM. Gregory R. Lucas appeals as of right from a February 8, 1983, decision of Wayne

* Former circuit court judge, sitting on the Court of Appeals by assignment.

County Circuit Court. The court found that the Michigan Employment Security Commission (MESC) Board of Review had correctly interpreted the Trade Act of 1974, 19 USC 2201 *et seq.,* in holding Lucas ineligible for Trade Readjustment Allowance (TRA).

Lucas was employed by Massey-Ferguson from September 24, 1974, through August 1, 1980. He worked on the cab line from 1978 until he was temporarily laid off on May 5, 1980. When he returned to work on June 23, 1980, he was assigned to the B-line. He worked on the B-line for two weeks and then took a medical leave of absence from July 7, 1980, to August 15, 1980, whereupon he was laid off again because the entire plant had been shut down August 1, 1980. The workers on the cab line who were laid off on or after August 1, 1980, were certified as eligible for TRA benefits by the Department of Labor. The workers on the B-line were denied eligibility to apply for adjustment assistance.

The MESC Board of Review found that Lucas had terminated employment on the certified cab line on June 23, 1980, upon his transfer to the B-line. Since the B-line was denied eligibility for adjustment assistance and that is the line from which Lucas was separated on August 1, 1980, he was found to be not eligible for adjustment assistance.

Lucas claims the MESC erroneously interpreted the TRA eligibility requirements. Under Michigan law, a decision by the MESC may be reversed only where it is contrary to law or is not supported by competent, material, and substantial evidence on the whole record. MCL 421.38(1); MSA 17.540(1); *Chrysler Corp v Sellers,* 105 Mich App 715; 307 NW2d 708 (1981). The issue in this case is a legal

one, *i.e.,* interpretation of provisions of the Trade Act of 1974.

19 USC 2291, in effect in 1980 stated in pertinent part:

"Payment of a trade readjustment allowance shall be made to an adversely affected worker covered by a certification under subpart A of this part who files an application for such allowance for any week of unemployment which begins after the date specified in such certification pursuant to section 2273(a) of this title, if the following conditions are met:

"(1) Such worker's last total or partial separation before his application under this part, occurred—

"(A) on or after the date, as specified in the certification under which he is covered, on which total or partial separation began or threatened to begin in the adversely affected employment * * *."

The certification by the Department of Labor provides in pertinent part:

"All workers of the North American Tractor Plant, Detroit, Michigan, of the Tractor Division of Massey-Ferguson Inc., engaged in employment related to the production of small farm tractors (A-line) who became totally or partially separated from employment on or after October 1, 1979, and workers engaged in employment related to the production of cabs for farm tractors (Artesian Building) who became totally or partially separated from employment on or after August 1, 1980, and before January 1, 1981, are eligible to apply for adjustment assistance under Section 223 of the Trade Act of 1974.

"I further determine that workers at the North American Tractor Plant, Detroit, Michigan, of the Tractor Division of Massey-Ferguson, Incorporated, engaged in employment related to the production of medium farm tractors (B-line) and loader-backhoes (C-line) are denied eligibility to apply for adjustment assistance under Section 223 of the Trade Act of 1974.

"Signed at Washington, D.C., this 30th day of June, 1981."

29 CFR 91.7 also states qualifying requirements. It states in pertinent part:

"§ 91.7 Qualifying requirements.
"To qualify for a trade readjustment allowance an individual must meet each of the following requirements.
"(a) *Certification.* The individual must be an adversely affected worker covered by a certification.
"(b) *Separation.* The individual's last separation must occur:
"(1) On or after the impact date * * *".

29 CFR 91.3(a)(4) defines "adversely affected worker" for the purposes of the Trade Act:

"(4) 'Adversely affected worker' means an individual who, because of lack of work in adversely affected employment:
"(i) Has been totally or partially separated from such employment, or
"(ii) Has been totally separated from employment with the firm in a subdivision of which such adversely affected employment exists."

Section 91.3(a)(4)(ii) would seem to support Lucas's interpretation that a claimant need not be directly separated if the other requirements are met. The fact that subsections (i) and (ii) are separated by the disjunctive "or" implies that (ii) is an alternative to (i). Subsection (i) states "from *such* employment". Since "adversely affected employment" (*i.e.,* "such employment") is defined as "employment in a firm or appropriate subdivision of a firm if workers of such firm or subdivision are certified * * * as eligible to apply for adjustment

assistance", 29 CFR 91.3(a)(3), there would be no reason to provide an alternative to (i) unless the intention was to include workers who were not *directly* separated from "such employment".

However, § 91.7(b)(1) requires that a claimant's "last separation must occur: * * * [o]n or after the impact date". "Last separation" is defined at 29 CFR 91.3(a)(20) as follows:

> "(20) 'Last separation' means the total or partial separation from adversely affected employment most recently preceding an individual's application to trade readjustment allowances as to which it is determined that the individual qualifies under § 91.7."

So, although a claimant need not necessarily be *directly* separated from "adversely affected employment", it would seem that his previous separation from "adversely affected employment" still must occur on or after the impact date specified by the certification. This is precisely the point that should distinguish the present case from the case relied on by Lucas. *Dewhirst v Review Board of Indiana Employment Security Division,* 419 NE2d 150 (Ind App, 1981).

In the instant case, Lucas was separated from adversely affected employment (the cab line) on June 23, 1980. The impact date specified in the certification is August 1, 1980. Therefore, Lucas was not separated from adversely affected employment on or after the impact date and does not meet the requirements provided in § 2291 and § 91.7 to qualify for a trade readjustment allowance.

Lucas argues that to deny him TRA benefits because his employer transferred him to a noncertified product line shortly before layoff is unreasonable and unfair. However, it is a requirement

of the Trade Act that an impact date be specified. 19 USC 2273(a). Since Mr. Lucas was separated from adversely affected employment before the impact date, he failed to meet a specific qualifying requirement. As such, the language of the act is clear and must be applied, not interpreted. *City of Lansing v Lansing Twp,* 356 Mich 641, 649; 97 NW2d 804 (1959).

We hold that MESC incorrectly interpreted 19 USC 2291 as well as the accompanying regulations, 29 CFR 91.7 and 29 CFR 91.3(a), subds (3), (4), (20), and the trial court incorrectly upheld its decision based upon this interpretation. Those sections do not require the separation of an employee *directly* from adversely affected employment. However, those sections do require that, in order to qualify for TRA benefits, the claimant's separation from adversely affected employment, whether direct or indirect, must be on or after the impact date specified by the Department of Labor's certification for adjustment assistance. Such was not the case herein.

While we reject the lower court's interpretation of the statute, we affirm the result reached. Where, as here, the trial court achieves the right result, but assigns the wrong reason therefor, we will not disturb the result on appeal. *Gilbert v Grand Trunk Western R Co,* 95 Mich App 308; 290 NW2d 426 (1980).

Affirmed.